**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **CINCINNATI INSURANCE CO.,** | ) |
| | ) |
|     **Plaintiff/Counter Defendant,** | ) |
| | ) |
| **v.** | )   **Case No. 4:20-CV-358-SNLJ** |
| | ) |
| **SAINT LOUIS PRODUCE MARKETS,** | ) |
| **INC.,** | ) |
| | ) |
|     **Defendant/Counter Claimant.** | ) |

**<u>MEMORANDUM AND ORDER</u>**

This case involves an insurance coverage dispute between Cincinnati Insurance Company ("plaintiff") and its insured, Saint Louis Produce Markets, Inc. ("defendant"), regarding the scope of damage to defendant's covered property caused by a fall 2017 storm. Plaintiff filed this declaratory judgment action, invoking this Court's diversity jurisdiction and seeking a declaration that its offer of payment to defendant is all it owes for covered damage. Defendant filed a counterclaim for declaratory judgment and breach of contract, seeking a declaration regarding their appraisal rights and damages for plaintiff's refusal to participate in appraisal and meet its obligations for covered losses.

Plaintiff has two motions pending before the Court: (1) a motion for summary judgment, and (2) a motion to strike defendant's third amended disclosure of expert witnesses and reports. The Court will grant plaintiff's motion for summary judgment in part and deny it in part and will deny the motion to strike.

1

## Background

The relevant insurance policy in this case provides commercial property coverage for a series of buildings at 1 Produce Row, St. Louis, MO 63102, with effective dates November 18, 2015, to November 18, 2018 ("the Policy"). The Policy covers hail and wind damage to the covered property. The applicable policy deductible is $50,000.

In September 2018, defendant submitted a claim for roof damage allegedly caused by wind and hailstorms on October 9, 2017, or November 5, 2017, or both. Defendant's property previously suffered hail damage in an April 2012 storm and wind damage in December 2012 and November 2013 storms. Defendant filed insurance claims with its prior insurer for its 2012 and 2013 losses. The parties' coverage dispute centers on the extent of damage caused by the 2017 storms and how much of the damage can be attributed to the 2017 storms—when defendant had insurance through plaintiff—as opposed to the 2012 and 2013 storms—when defendant did not have insurance through plaintiff. In spring 2017, a contractor informed defendant that its property had hail damage likely caused by the April 2012 storm. Defendant claims the October 2017 storm caused additional damage for which plaintiff wrongfully denied coverage.

Plaintiff hired HAAG Engineering Co. to inspect defendant's claimed damage. HAAG issued a report concluding most of defendant's claimed damage pre-dated fall 2017. Plaintiff hired an independent adjuster, Young & Associates, which estimated defendant's covered loss at an actual cash value of $33,274.65 and a real cash value of $42,028.29.[1] In

---

[1] The parties' expert reports include estimates for "RCV" and "ACV." The parties indicate "ACV" stands for "actual cash value" and refer to "RCV" as "real cash value" or "replacement cost value."

October 2018, plaintiff offered to pay defendant $4,997.93 once defendant made repairs, based on an estimated loss of $54,997.93 minus the $50,000.00 policy deductible. Plaintiff did not make any actual cash value payment because its estimate of the actual cash value of the loss did not exceed defendant's deductible.

Defendant hired a public adjuster, Gavnat and Associates, who valued defendant's loss at more than $2.1 million dollars, a number defendant claims has grown due to increases in material and labor costs. Defendant sought to have its claims submitted to appraisal under an appraisal provision in the Policy. Plaintiff refused the appraisal request, claiming the parties' dispute was not subject to appraisal under the Policy because the parties disagree about coverage, not just the value of the property or amount of loss.

Plaintiff then filed this declaratory judgment action, seeking declarations that (1) the appraisal demanded by defendant was properly rejected; (2) plaintiff offered to pay for all covered damage from the October 2017 storm; and (3) plaintiff does not owe any additional money to defendant. Defendant filed a counterclaim seeking declarations regarding its appraisal rights and damages for breach of contract for plaintiff's refusal to participate in appraisal and refusal to pay their claim.

After filing its counterclaim, defendant filed a motion to compel appraisal. This Court denied the motion, concluding the parties' dispute is a coverage dispute, which, under Missouri law, cannot be resolved through the appraisal process. *See Cincinnati Ins. Co. v. St. Louis Produce Mkts., Inc.*, No. 4:20 CV 358, 2020 WL 5848075 at *2 (E.D. Mo. Oct. 1, 2020) (slip copy). Plaintiff moved for judgment on the pleadings, which this Court also denied in the same order. Although the Court agreed with plaintiff that the appraisal

3

demanded by defendant was properly rejected, the parties' coverage dispute and related question of how much, if anything, plaintiff owes under the Policy remain open. *Id.* at *3.

Plaintiff now moves for summary judgment, arguing that as a matter of law, it is entitled to declarations that (1) its denial of appraisal was proper under the circumstances, and (2) it owes no insurance money to defendant. Plaintiff also moves to strike defendant's third amended expert disclosure and requests a hearing on its motion to strike.

### Legal Standard for Summary Judgment

Per Federal Rule of Civil Procedure 56, a district court may grant a motion for summary judgment "only when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Olga Despotis Trust v. Cincinnati Ins. Co.*, 867 F.3d 1054, 1059 (8th Cir. 2017). This burden is on the moving party. *City of Mt. Pleasant v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). In addition to viewing the facts in a light most favorable to the nonmoving party, the Court must give that party the benefit of any inferences that logically can be drawn from those facts. *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009).

Missouri law governs interpretation of the insurance policy in this diversity case. *See Secura Ins. v. Horizon Plumbing, Inc.*, 670 F.3d 857, 861 (8th Cir. 2012). In Missouri, interpretation of an insurance policy is a question of law. *Schmitz v. Great Am. Assur. Co.*, 337 S.W.3d 700, 705 (Mo. banc 2011). The "'cardinal rule'" for contract interpretation is to "'ascertain the intention of the parties and to give effect to that intention.'" *Secura*, 670 F.3d at 861 (quoting *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261,

264 (Mo. 1973)). "The parties' intent is presumptively expressed by the plain and ordinary meaning of the policy's provisions, read in the context of the policy as a whole." *Id*. (cleaned up). "When interpreting the terms of an insurance policy, [the Missouri Supreme] Court applies the meaning that would be understood by an ordinary person of average understanding purchasing the insurance." *Schmitz*, 337 S.W.3d at 705-06.

**Analysis**

**1. Appraisal is not the appropriate venue to resolve the parties' coverage dispute.**

Plaintiff first seeks a declaration that appraisal is not proper under the Policy. The Court already analyzed this issue in its prior order denying defendant's motion to compel appraisal and plaintiff's motion for judgment on the pleadings. *See Cincinnati Ins. Co.*, 2020 WL 5848075. As explained in that order, the primary dispute in this case is "***what*** caused defendant's roof damage, not the '***value*** of the . . . amount of loss' (the policy's express and limiting language) resulting from those causes." *Id*. at *3. The Court adopts its prior analysis and conclusion that plaintiff properly rejected defendant's appraisal demand at this stage because the parties' dispute is over coverage and, under Missouri law, insurance coverage disputes cannot be resolved through the appraisal process. *Id*. at *2. This conclusion resolves both parties' declaratory judgment claims on this issue and defendant's breach of contract claim to the extent it claims plaintiff breached the contract by refusing appraisal. *See D.R. Sherry Const., Ltd. v. Am. Fam. Mut. Ins. Co.*, 316 S.W.3d 899, 904 (Mo. banc 2010) ("To make a submissible case for its breach of contract claim, [defendant] was required to present evidence from which the jury could have a reasonable basis for finding that . . . [plaintiff] breached its obligation under the contract . . .").

2. **Plaintiff has not shown it is entitled to summary judgment on the parties' coverage dispute claims.**

Plaintiff next seeks summary judgment on the parties' coverage claims, arguing that as a matter of law, it did not breach their contract and it owes no insurance money to defendant.  In support, plaintiff argues: (1) the parties have never reached agreement as to any valuation of loss, which is a precondition under the Policy to payment being due; (2) defendant cannot show a covered loss that exceeds its deductible.

First, plaintiff argues it should win defendant's breach of contract claim as a matter of law because, under the Policy, no payment from plaintiff to defendant has come due, meaning plaintiff could not have breached the contract by failing to make payments it did not owe.  As relevant here, the Policy provides:

> **Loss Payment**
>
> a. In the event of "loss" insured by this Coverage Part, at our option, we will either:
>
> (1) Pay the value of lost or damaged property;
>
> (2) Pay the cost of repairing or replacing the lost or damaged property;
>
> (3) Take all or any part of the property at an agreed or appraised value; or
>
> (4) Repair, rebuild or replace the property with other property of like kind and quality.
>
> We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of **SECTION D. LOSS CONDITIONS, 7. Valuation** or any applicable provision that amends or supercedes this valuation condition . . .

6

> h. We will pay for insured "loss" within 30 days after we
> receive the sworn proof of loss if you have complied with all
> of the terms of this Coverage Part; and
>> (1) We have reached agreement with you on the amount of
>> "loss"; or
>> (2) An appraisal award has been made.

Doc. #41-1 at 85.  Plaintiff points to section (h), arguing that under the Policy, it does not owe payment for a covered loss until either the parties have agreed on the amount of loss or an appraisal award has been made.  Because neither of those things has occurred, plaintiff argues any obligation it may have to pay defendant has not been triggered, meaning it cannot have breached the Policy by not issuing payment to defendant for any covered loss.  *See Highland Inns Corp. v. Am. Landmark Corp.*, 650 S.W.2d 667, 672 (Mo. Ct. App. 1983) ("No promise based upon a condition can be enforced as such until the contingency upon which it depends has happened." (cleaned up)).

Plaintiff's argument fails.  To prove breach of contract, defendant will have to show: (1) the parties had a contract that included certain rights and obligations, (2) plaintiff breached its obligations under the contract, and (3) plaintiff's breach damaged defendant. *D.R. Sherry*, 316 S.W.3d at 904.  The Policy obligates plaintiff to settle and pay for covered losses to defendant's property according to the Policy terms.  Defendant claims plaintiff breached its obligations by denying coverage for losses covered by the Policy, including by refusing to pay the actual cash value of the covered loss and by repudiating its obligation to pay for additional costs once repairs took place.  "When an insurance company

7

wrongfully refuses payment of a claim to its insured, the company has simply breached its contract." *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 67 (Mo. banc 2000)). Plaintiff argues, essentially, it could never breach the contract by denying coverage because plaintiff has no enforceable obligation to defendant unless plaintiff agrees that a loss is covered and either reaches agreement with defendant on the amount or receives an appraisal award. Plaintiff's focus on just this one provision takes too narrow a view of its obligations under the Policy. *See D.R. Sherry*, 316 S.W.3d at 906 (holding insured presented a submissible breach of contract claim where it showed its insurer denied coverage for an occurrence covered by its policy); *Colum. Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 77 (Mo. banc 1998) ("The provisions of an insurance policy are read in the context of the policy as a whole."). Plaintiff has not shown it is entitled to summary judgment based on its payment not yet coming due under this one section of the Policy.

Second, plaintiff argues it is entitled to summary judgment because defendant cannot establish it suffered a loss for which plaintiff owes payment. Plaintiff's primary argument on this point requires numerous steps, as follows: (1) the Policy provides for replacement cost value of covered losses; but (2) under the Policy, plaintiff will not pay for the difference between actual cash value and replacement cost value unless repairs to the damaged property are done or at least underway within two years of the date of loss; (3) defendant did not start repairs within two years of the date of loss, so defendant cannot recover replacement cost value and can only recover actual cash value; (4) defendant did not provide an actual cash value calculation of its loss, meaning (5) defendant does not have submissible evidence to prove any recoverable damages at trial.

Plaintiff has not shown it is entitled to summary judgment on this issue. The applicable Policy provision reads:

> **3. <u>Replacement Cost</u>**
>
> a.  Replacement Cost (without deduction for depreciation) replaces "Actual Cash Value" in **SECTION D. LOSS CONDITIONS, 7. Valuation** of this **BUILDING AND PERSONAL PROPERTY COVERAGE FORM** . . .
>
> d.  We will not pay on a replacement cost basis for any "loss":
>
> (1)  Until the lost or damaged property is actually repaired or replaced with other property of generally the same construction and used for the same purpose as the lost or damaged property; and
>
> (2) Unless the repairs or replacement have been completed or at least underway within 2 years following the date of "loss".

Doc. #41-1 at 90. The Policy states plaintiff will not pay more for "loss" on a replacement cost basis than the least of the applicable limit of insurance; the cost to replace the property with property of comparable material and quality; or the amount defendant actually and necessarily spends to repair or replace the property. *Id*. Replacement cost replaces "Actual Cash Value" in valuation; "Actual Cash Value" is defined in the Policy as "replacement cost less a deduction that reflects depreciation, age, condition and obsolescence." *Id*.

"Courts applying Missouri law have found when a policy requires repair or replacement of the damaged property as a condition precedent to receiving payment for the repair or replacement costs, the insurer has no obligation to pay that amount unless and until repair or replacement occurs." *Olga Despotis*, 867 F.3d at 1064. But the issue here

9

is not whether plaintiff breached the contract by failing to make a full replacement cost payment before defendant made repairs. *See id.* Defendant does not claim that. Defendant claims plaintiff breached the contract by denying coverage for a covered "loss" and refusing to meet its obligations for handling covered "loss." Having denied that the roof damage is a "loss," plaintiff cannot then rely on the two-year limitation that applies only to "loss." *See Calhoun v. State Farm Fire & Cas. Co.*, No. 4:19 CV 2540, 2021 WL 3885556 at *3 (E.D. Mo. Aug. 31, 2021) (slip copy) ("Although [insurance company] thus says [insured] forfeited payment for the roof replacement because it did not [make repairs] within two years of the loss . . . because [insurance company] disclaimed coverage of the roof replacement . . . [insurance company] cannot now hinge its failure to pay on the two-year limitation."); *cf. Boten v. Brecklein*, 452 S.W.2d 86, 92 (Mo. 1970) ("It is elementary that a party to a contract cannot claim its benefit where he is the first to violate it.").

For this reason, plaintiff has not shown it is entitled to summary judgment based on defendant's supposed failure to complete or set repairs at least underway within two years of the date of loss. Because this argument fails, the Court does not need to address the remaining steps of plaintiff's argument on this point regarding supposed lack of actual cash value evidence. There is no dispute that defendant disclosed submissible evidence regarding its calculation of the costs to repair or replace its damaged property.

Plaintiff also argues defendant cannot prove a loss that exceeds its deductible. This argument requires accepting plaintiff's view of the fundamental fact dispute in this case: whether most of the damage to defendant's roof occurred during the Policy period. The record shows this is a material fact dispute. For example, plaintiff relies on its engineering

expert, who opined that almost all of defendant's claimed damage pre-dated the Policy period, based, in part, on a comparison between damage on old portions of the roof and a lack of damage on portions that were more recently retrofitted with new roofing. Defendant's engineering expert opined, though, that "all existing roof systems, even the areas that were retrofitted with a new roof over the existing roof were impacted by hail and have sustained significant damage" and that hail reports from the October 2017 storm aligned with the observed damage.  Doc. #47-5 at 2.  Defendant also supports its claim with other evidence, including weather reports and testimony from its property manager, public adjuster, and roofing expert.  Based on careful review of the entire record, the Court finds that plaintiff's attempts to discredit defendant's evidence present material fact disputes.  Plaintiff has not met its burden on summary judgment.  *See City of Mt. Pleasant*, 838 F.2d at 273.  The Court will deny plaintiff's motion for summary judgment on the coverage dispute claims.

### 3.  The Court will deny plaintiff's motion to strike and request for hearing.

Plaintiff moves to strike defendant's Third Amended Disclosure of Expert Witnesses and Reports as untimely.  Per this Court's scheduling orders, the deadline to disclose expert witnesses and provide Rule 26(a)(2) expert reports was December 7, 2020. Discovery closed on May 11, 2021.  Plaintiff deposed defendant's expert James Pierce, a public adjuster, on May 21, 2021.  Mr. Pierce testified that when adjusting a claim, he would, on request, typically factor in depreciation to calculate an actual cash value estimate but had not done so in his report, as there "may have been open questions or not clear understanding of something."  Doc. #43-6 at 2.

11

Plaintiff filed its summary judgment motion on June 15, 2021.  Later that afternoon, defendant served its Third Amended Disclosure of Expert Witnesses and Reports.  This amended disclosure provided an updated property loss estimate from Mr. Pierce, who defendant had previously and timely disclosed as an expert with a Rule 26(a)(2) report. *See* Fed. R. Civ. P. 26(a)(2).  Defendant said the amendment "reflects current pricing, as of June 2021, for the same scope as the previous estimate."  Doc. #43-4 at 2.  As plaintiff points out, the amended disclosure included both an updated replacement cost value estimate based on pricing increases and a new actual cash value calculation, showing depreciation of about $580,000.00 (approximately 21%) from the updated replacement cost value estimate.  Mr. Pierce's previous report included an actual cash value estimate that was only $27 less than the replacement cost value estimate.

Plaintiff does not argue that defendant failed to timely identify Mr. Pierce or provide a timely expert report.  *See* Fed. R. Civ. P. 26(a)(2).  Rather, plaintiff seeks to exclude defendant's amended disclosure updating Mr. Pierce's valuation estimates—in particular, plaintiff argues the actual cash value estimate should be excluded. Rule 26(e) states parties must supplement or correct disclosures if they learn "that in some material respect the disclosure or response is incomplete or incorrect."  *Id*. at 26(e)(1)(A).  For experts for whom a report must be disclosed, "the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due."  *Id*. at 26(e)(2).  Per the Court's scheduling order in this case, the parties' pretrial disclosure are due 20 days prior to the

date set for trial, which is November 29, 2021.  Accordingly, if defendant's June 15, 2021 amended disclosure was a supplement under Rule 26(e), as defendant claims, it was timely.

Plaintiff argues defendant's amended expert disclosure cannot be considered a Rule 26(e) supplement because Mr. Pierce could have calculated actual cash value earlier and just did not do so.  *See McClurg v. Mallinckrodt, Inc.*, 2017 WL 3116138 at *3 (E.D. Mo. July 21, 2017) (unreported) (explaining Rule 26(e) applies when an expert learns of new information that was previously unknown or unavailable and is not an opportunity to disclose new opinions).  If the amended disclosure was untimely, Rule 37 gives the Court discretion to issue sanctions for the failure to make proper disclosures, including exclusion of evidence, "unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Defendant argues any failure was harmless because plaintiff already knew about Mr. Pierce, his replacement cost value estimate and calculations, the general principles involved in factoring in depreciation to calculate actual cash value, and Mr. Pierce's knowledge of how to make that calculation.  As a result, defendant argues, plaintiff knew Mr. Pierce could testify to, at minimum, his replacement cost value estimate and an explanation of how to then calculate actual cash value.  Defendant also notes that plaintiff has its own expert who calculated replacement cost and actual cash value estimates and thus is already prepared to address the actual cash value of the claim at trial.  Defendant argues plaintiff cannot claim any surprise from Mr. Pierce's actual cash value estimate or prejudice from receiving this update months before trial.

Plaintiff argues it was harmed by the amended disclosure because it based its summary judgment motion, on part, on defendant's lack of actual cash value evidence.  For

13

the reasons explained above, this issue would not change the outcome of plaintiff's summary judgment motion, so that harm argument fails.  Plaintiff does not provide any other suggestion of harm.  The Court finds none.

Contrary to plaintiff's argument, this case is not like *Trost v. Trek Bicycle Corporation*, 162 F.3d 1004 (8th Cir. 1998), where the plaintiff failed to conduct expert product testing or provide any expert report at all until well after the expert discovery and dispositive motion deadlines and then offered significant new opinions mere weeks before trial.  *See id.* at 1006-07.  There is no indication here that this limited update to defendant's disclosure requires plaintiff to conduct additional discovery, re-depose Mr. Pierce, name a new rebuttal expert, or make substantial changes to its preparation of the case.  The disclosure does not impact summary judgment and was made more than five months before trial.  In these circumstances, plaintiff "cannot claim any surprise or real prejudice" from Mr. Pierce's actual cash value calculation.  *See Dunning v. Bush*, 536 F.3d 879, 890 (8th Cir. 2008).  The Court has "wide discretion" in imposing sanctions for violations of Rule 26(a) or (e), and exclusion would not best serve the purposes of the rules under these facts. *See Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1204 (8th Cir. 2015); *McClurg*, 2017 WL 3116138 at \*3.  As a result, the Court will deny plaintiff's motion to strike.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment [Doc. #39] is **GRANTED** in part and **DENIED** in part, in accordance with this memorandum and order, and as follows:

Plaintiff's motion for summary judgment is **GRANTED** as to plaintiff's claim for a declaration that the appraisal demanded by defendant was properly rejected at this stage.

Plaintiff's motion for summary judgment is **GRANTED** as to defendant's counterclaims seeking a declaration regarding, and bringing a breach of contract claim for, plaintiff's rejection of defendant's appraisal demand.

Plaintiff's motion for summary judgment is otherwise **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to strike defendant's third amended expert disclosure [Doc. #43] is **DENIED**.

The case remains set for trial per the Court's scheduling orders.

Dated this 27th day of October, 2021.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE